## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  21-cv-2133

**JANE DOE** and
**JANE ROE**

Plaintiffs,

v.

**BOULDER VALLEY SCHOOL DISTRICT;** and
**DONALD STENSRUD,** in his individual capacity.

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiffs Jane Doe ("Ms. Doe") and Jane Roe ("Ms. Roe"), for their Complaint against

Defendants, Boulder Valley School District and Donald Stensrud state as follows:[1]

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Jane Doe is a Colorado resident who lives in Boulder, Colorado.  Ms. Doe

turned 18 on May 28, 2019. The parties have signed an agreement tolling the statute of limitations

from May 29, 2021 to August 6, 2021.

2.      Plaintiff Jane Roe is a Colorado resident who lives in Lafayette, Colorado. Ms. Roe

turned 18 on April 9, 2020.

3.      Defendant Boulder Valley School District ("BVSD") is a Colorado public school

district.  BVSD receives federal funding and is subject to Title IX of the Educational Amendments

---

[1] Due to the sensitive nature of the abuse contained herein as well as the ages of the students involved, Plaintiffs ask this court to permit them to proceed under the pseudonym of "Jane Doe" and "Jane Roe" and permit the parties to refer to the student who assaulted them as "John Smith." Plaintiffs have filed a motion contemporaneously with this Complaint seeking permission to proceed under pseudonym.

of 1972, 20 U.S.C. § 1681(a) ("Title IX").  Fairview High School ("Fairview") is one of the K-12 institutions that comprise BVSD.

4.  Upon information and belief Defendant Donald Stensrud ("Principal Stensrud") is a Colorado resident.  At all times relevant to this lawsuit, Principal Stensrud was employed by BVSD as the principal of Fairview.

5.  This Court has jurisdiction over this action under 28 U.S.C. §1331 and 28 U.S.C. §1367.

6.  Venue is proper in this Court under 28 U.S.C. §1391(b)(1) and (2).

## INTRODUCTION

7.  This Title IX civil rights action arises from one school's extensive history of cultivating a sexually hostile environment, failing to respond to reports of sexual assault, failing to adequately train students, teachers, and administrators on sexual assault and Title IX, and failing to even commence Title IX investigations.

8.  The school in question, Fairview High School in Boulder Colorado, exhibited a total failure to implement even the most basic requirements under Title IX in exchange for its substantial federal funding and instead has created a sexually hostile culture where tolerance of sexual violence is expected and would-be offenders are encouraged to perpetrate on other students. As detailed below, Plaintiffs are two of many such students who suffered the brunt of Fairview's discriminatory and contentious attitudes towards women who reported being raped.  As many other survivors have described, Plaintiffs' experiences herein were the norm at Fairview as the school and its principal repeatedly turned a blind eye to rampant sexual harassment and abuse.

**TITLE IX**

9.      Title IX, more formally known as the Educational Amendments of 1972, was enacted to prevent students' loss of education opportunities due to a school's discrimination against them based on their gender.

10.     Schools such as Fairview are obligated to enforce Title IX as well as all other federal civil rights laws in exchange for money received from the federal government for their programs.  Enforcement is not optional.

11.     In the context of sexual harassment or abuse, discrimination occurs if a school demonstrates an official policy of discrimination on the basis of gender, fails to respond to reports of gender harassment, or fails to address a known risk of gender harassment in its programs.

12.     More specifically, when a school receives a report of harassment perpetrated by one of its students against another, the school must respond by investigating the harassment and both remedying the effects on the victim and preventing the harassment from recurring.  This includes the use of grievance procedures in place at the school.   At the time that Ms. Roe and Ms. Doe were assaulted, schools were required to respond, even in the case of harassment or abuse that occurred off campus, so that the victim did not suffer from a hostile environment due to going to school with her assailant and so that no other students were harmed by the potentially dangerous student.

13.     Similarly, the Department of Education had made clear that schools cannot wait for the conclusion of any criminal proceedings before conducting such an investigation.  Historically, many female students reporting sexual abuse in high school would either drop out or suffer severe mental health effects while schools improperly waited for law enforcement to act.

14. No Department of Education guidance permitted schools to a) wait and see if a student was charged with a crime, b) permit schools to merely impose a non-contact order, or c) refuse to conduct an investigation into the abuse.

### THE OFFICIAL POLICY OF DELIBERATE INDIFFERENCE AT FAIRVIEW

15. Fairview has had a long history of sexual harassment and sexual abuse and an equally long history of failing to respond to both. The "do nothing" approach has become the expected response from the administration for students and staff alike.

16. Over the past decade, Fairview has created a toxic culture that includes instances of openly sexist comments made by the principal and other administrators, a demonstrated pattern of ignoring reports of sexual assault, comments by administrators disbelieving and minimizing survivors' reports of rape, failing to report sexual abuse of children to law enforcement, interfering with law enforcement investigations, and intimidating staff who wish to address the sexually hostile culture.

17. This toxic culture has resulted in a policy of deliberate indifference among high-ranking members administrators of ignoring reports made by female students and allowing gender violence to flourish. This policy of indifference is significantly heightened for accused male student athletes who commit the overwhelming majority of the sexual assaults at Fairview, and existed before, during and after the time that Plaintiffs were raped.

18. As one example of this indifference, during the 2017/2018 school year, a female student reported that she had been sexually assaulted and harassed by another male student at Fairview during school hours. The male student grabbed the female student inappropriately in hallways, made sexual contact with her without her consent and even exposed himself to her in class. When the student reported to former Dean James Lefebvre, including sending him a written

4

statement regarding the conduct, Dean Lefebvre failed to comply with his legal duty to report the assault to law enforcement, conducted no Title IX investigation or disciplinary proceedings and instead had both students sign a mutual No-Contact Agreement with each other.

19.     Dean Lefebvre was criminally charged with Failure to Report Child Abuse or Neglect as a result of this incident.

20.     This policy of deliberate indifference is also manifested in Fairview's longstanding position of refusing to respond to notice of sexual assault or sexual harassment that occurred off-campus unless the victims chose to pursue criminal charges or seek a restraining order, even where such misconduct led to a hostile educational environment at Fairview or created a substantial risk of harm for other female Fairview students.   As a result, Fairview repeatedly and cavalierly violated both federal Title IX guidance as well as its own policies.

21.     Fairview has confirmed their refusal to investigate short of criminal charges on many occasions including stating such to the parents of female students during the 2016 and 2017 school years.

22.     In December 2019, Principal Stensrud also confirmed this position at a meeting with Fairview parents where he stated that without criminal charges or a restraining order in place, he refused to take any action against a student alleged to have sexually assaulted another female student.

23.     Fairview officials have also contributed to this policy of deliberate indifference by perpetuating an environment of fear and sexism that discourages students and staff from speaking up to address the discrimination.

24.    In 2020, Boulder Police Department along with the Boulder District Attorney's Office, apparently fed up with the recurring problems at Fairview, conducted an investigation into the historical problems at Fairview dating back to at least the early 2000s.

25.    In this investigation, they received numerous reports documenting an environment of fear and sexism, including that a Fairview Athletic department administrator told Fairview staff members that "boys could not be expected to behave because of the pressure they were under and all of the pornography they watched," and that the problem at Fairview was "the girls and that they were making bad choices, and then later coming back and calling it rape." Both this athletic director and the previous athletic director in 2017 have been described as being part of the "old boys club," a reference to favoring male students over female.

26.    Similarly, the investigation documented that Don Stensrud, school principal since 2004, told Boulder Police Department in response to learning of a report of sexual assault against a Fairview athlete, that "girls are groupies" who "throw themselves" at the suspect. And after a teacher reported to Principal Stensrud that female students were saying inappropriate things about her, including that she was having a sexual relationship with them, Principal Stensrud responded "[t]hose are good boys. They have full ride scholarships. I'm sure it's just jealous girls starting the rumor."

27.    Other employees reported that there has always been a culture at the school of "the women are here for our enjoyment" and that Principal Stensrud would reference female administrators, teachers and even female Boulder Police officers as "girls" while referring to the male students as "young men." Defendant Stensrud would say about female administrators that "[t]he girls are being so cute" and made comments to a new teacher that she was "pretty" and "young."

28.     Similarly, staff have reported that female students and staff do not feel safe because of the way administrators, including Principal Stensrud and the former Athletic Director, have handled allegations and instances of sexual assault and have reported instances where female students who do come forward are harassed and accused of lying when they report, much like Ms. Doe experienced.

29.     As one staff member put it, teachers who have been there less than three years are afraid they will lose their jobs if they challenge Defendant Stensrud and he openly bullies and belittles staff creating an environment of fear at the school.

30.     The policy of deliberate indifference at Fairview is also perpetuated by the ongoing failure to train staff on how to respond to sexual assault and failure to meaningfully educate students regarding sexual harassment, violence, and consent, which further heightens the risk that female students like Ms. Doe and Ms. Roe will be sexually assaulted by their peers.

31.     Between 2009 and 2018, despite the high incident of sexual harassment and sexual assault at Fairview, and numerous reports received by administrators, no Title IX-specific training or programming was provided to staff or students.

32.     This toxic culture, the policy of deliberate indifference, and the complete failure of Fairview officials to address sexual misconduct or comply with their Title IX responsibilities, created a heightened risk that sexual abuse would occur at Fairview and perpetuated a "rape culture" at the school that was known and obvious to Fairview officials, and repeatedly raised as a concern by staff, students and Fairview community members.

33.     One staff member indicated that she had been "helping girls report sexual assault to the school for years and that nothing ever would come from those reports."  This staff member further indicated that the number of girls coming forward was "a lot" and that the numbers are

increasing.  She also stated that the majority of the assaulted were committed by male student athletes.

34.     Since at least the 2016-2017 school year, and likely earlier, parents have raised concerns to the school about this culture and the lack of school response to sexual assault to no avail.

35.     And, upon information and belief, female students have also raised concerns about the culture and heightened risk at Fairview directly with district officials, including sending letters to the BVSD School Board about the problem.

36.     This hostile culture and policy of wholesale indifference, with their clear message that sexual assault is a tolerable part of being in high school, has led to increased sexual violence at Fairview and many, including Plaintiffs, have suffered as a result.

## MS DOE'S RAPE AND REPORT TO FAIRVIEW

37.     During the 2016-2017 school year, Ms. Doe and Ms. Roe were both students at Fairview – Ms. Doe was a sophomore and Ms. Roe was a freshman.  Ms. Doe and Ms. Roe were both minors at the time.

38.     Mr. Smith was also a sophomore at Fairview during the 2016-2017 school year and was a member of the Fairview lacrosse team, Fairview student council, and a former freshman class president.

39.     In spring of 2016, Ms. Doe began dating Mr. Smith.

40.     On October 29, 2016, Mr. Smith and Ms. Doe attended a Halloween party together at the home of Student B.  At the party, Mr. Smith became inebriated and belligerent. After noticing that Ms. Doe was talking to another male Fairview classmate, Mr. Smith grabbed Ms. Doe and dragged her into an electrical closet.  Although she tried to leave, Mr. Smith blocked the door.

While in the closet, he pushed her down and made her perform oral sex on him. When Ms. Doe again attempted to get up and leave, Mr. Smith refused to let her go.  He then vaginally raped her while she plead with him to stop.

41.     Ms. Doe left the closet abruptly, noticeably upset and sobbing.  Mr. Smith came out angrily shortly afterwards and punched a wall. He was visibly enraged and several of Ms. Doe's classmates tried to take him outside.  Many of Ms. Doe's classmates observed what had happening and immediately went to check that Ms. Doe was okay.

42.     Ms. Doe eventually found several friends who helped her leave the party. The next day, Ms. Doe broke up with Mr. Smith.

43.     Although Ms. Doe's parents did not initially know what had happened, they noticed an immediate change in her behavior. She became despondent and withdrawn and was not acting like herself.

44.     Other students had been at the party and witnessed the aftermath of the assault, so word spread around the school.

45.     Because Mr. Smith was a popular student athlete at Fairview, Ms. Doe quickly became the target of victim-blaming, was ostracized by her classmates and harassed by Mr. Smith's friends. She struggled to attend classes or walk down the hallways at Fairview out of fear of running into Mr. Smith.  She would frequently see him in the hallways and break down crying, often sobbing so hard that she couldn't stand up.

46.     Ms. Doe's mental state quickly deteriorated.  On November 16, 2016, Ms. Doe met with her school interventionist/counselor, Jamie Smalley.  She was reluctant to tell Ms. Smalley about the rape, but asked Ms. Smalley if she could remain anonymous if she hypothetically reported a rape. Ms. Doe then told Ms. Smalley that her boyfriend had raped her at a school party.

That same day, Ms. Smalley reported the sexual assault to school resource officer Cory Nicholas, who documented it in report 16-15520 for the Boulder Police Department.

47.     The next day, Ms. Doe received a note in class stating she needed to report to Ms. Smalley.  When they met, Ms. Smalley informed Ms. Doe that as a mandatory reporter she had to contact law enforcement about the assault.  Ms. Smalley informed Ms. Doe that Ms. Doe would have to meet with the school resource officer. Ms. Doe met with Officer Nicholas and reported the rape in more detail. Ms. Doe did not want to disclose Mr. Smith's name at that time because she was still struggling to process what had happened but told Officer Nicholas that it was her boyfriend and that the rape occurred while at a party on Old Tale Road.

48.     Ms. Doe asked her mother to meet her at Ms. Smalley's office. When Ms. Doe's mother arrived, she was escorted to Ms. Smalley's office and found Ms. Doe.  Ms. Doe explained that she had been raped. Ms. Smalley then called in Officer Nicholas to speak with Ms. Doe's mother.

49.     According to BVSD policy JLF-R, in place at the time, all mandatory reports to Fairview counselors and staff were also reported to Principal Stensrud or a Fairview department head.

50.     After the report, Ms. Doe heard nothing further from Ms. Smalley or Fairview regarding her assault.  Ms. Smalley did, however, tell Ms. Doe that if she was having a hard time in class, she could take a break in Ms. Smalley's office at any time.

51.     After that, Ms. Doe began to visit Ms. Smalley's office on an almost daily basis because she became quickly overwhelmed and panicked in the classroom.   She frequently expressed to Ms. Smalley how uncomfortable she was at school, the hostile environment she was experiencing, her fears of running into Mr. Smith, and the ways that other students treated her.

52.     No investigation was ever conducted regarding the assault, Ms. Doe's hostile educational environment, or her vulnerability to further harassment and no protective measures were offered by the school.

53.     In the meantime, rumors of the rape continued to spread throughout Fairview and Ms. Doe continued to experience harassment at Fairview. In late November, Mr. Smith recorded a rap lyric about Ms. Doe and the assault on the app RapChat and made it publicly available to other Fairview students.  Classmates would frequently whisper about her in the hallways and she began to be cyberbullied through SnapChat and other social media.

54.     Ms. Doe also continued to be intimidated by Mr. Smith and his friends and tried to avoid encountering them at school, which made Fairview an even more difficult educational environment. On several occasions, Mr. Smith tried to reach out to Ms. Doe and told her she had no proof of what had happened, and that she was drunk and crazy.

55.     In early December, 2016, Mr. Smith reached out to Ms. Doe by SnapChat to apologize for what happened. In a series of SnapChats between December 1st and December 11th, Mr. Smith acknowledged that he had raped Ms. Doe, apologized for what had happened, and complained that his reputation at school had been "ruined."

56.     Ms. Doe shared this exchange with Ms. Smalley, along with reporting the social isolation and intimidation she was experiencing at school.  Ms. Doe's parents also began emailing Ms. Smalley and others at Fairview directly to let them know of the challenges Ms. Doe was facing and how she was struggling to deal with everything as a student at Fairview.

57.     During this time, Ms. Doe also became increasingly withdrawn from her school and friends, dropping out of sports and classes.  She became suicidal and began engaging in self-

harm.  Her family became so concerned for her safety that her mother slept in Ms. Doe's room for months out of fear that Ms. Doe might take her own life.

58.     Terrified for their daughter's safety, Ms. Doe's parents placed her into therapy, but Ms. Doe continued to struggle with the consequences of her rape and the ongoing hostile educational environment she was experiencing.

## STUDENT A'S RAPE BY MR. SMITH AND REPORT TO FAIRVIEW

59.     Ms. Doe was not the only victim of which Fairview was aware.  In fact, in October 2015, a year prior to Ms. Doe's rape, Mr. Smith also sexually assaulted one of Jane Doe and Jane Roe's classmates, Student A, at a party at a Fairview student's home.

60.     Student A was a neighbor of Mr. Smith's and their families were close.  As a result, out of fear and embarrassment, Student A did not immediately report that Mr. Smith had assaulted her.

61.     After the assault Student A also began struggling significantly at Fairview and had difficulty attending classes and participating in school activities due to Mr. Smith's presence on campus.  After months of hiding the assault, Student A finally disclosed to her mother that she had been raped by Mr. Smith.

62.     After learning of the assault, Student A's mother reported to Fairview officials, including former Fairview Dean Lefebvre.

63.     Fairview officials did not take action to investigate Mr. Smith's assault of Student A.

64.     As a result, Student A continued to suffer from difficulties attending Fairview. Increasingly worried about her daughter's health and safety, Student A's mother continued to

report the sexual assault to Fairview officials throughout the winter of 2016 and spring of 2017, requesting that school officials do something to help her daughter.

65.     For example, on March 24, 2017, Student A's mother had a conversation with Dean Lefebvre where she again reiterated that Mr. Smith had assaulted her daughter and also told Dean Lefebvre about Mr. Smith's rape of Ms. Doe, which at that point in time was widespread knowledge to students at Fairview, including Student A. Dean Lefebvre responded by telling Student A's mother that there was nothing that the school could do until Student A or Ms. Doe made a formal report to police.

66.     In Mid-April 2017, Student A also reported directly to Fairview officials that she had been assaulted by Mr. Smith in the fall of 2016.

67.     Despite these repeated reports to Fairview officials who had the ability to take corrective action, no Title IX investigation was ever opened regarding the hostile environment that Ms. Doe and Student A were experiencing, or the risk of harm that Mr. Smith posed to other Fairview students.

## FAIRVIEW IGNORES BOTH THE WORSENING HOSTILE ENVIRONMENT AND THE RISK OF HARM POSED BY MR. SMITH

68.     Throughout the spring of 2017, rumors continued to circulate concerning Mr. Smith's rape of multiple Fairview students.  By this point in time it was widespread knowledge that Mr. Smith had raped both Student A and Ms. Doe.

69.     Although many students at Fairview continued to support the popular Mr. Smith, some students began to publicly express their anger and frustration at Mr. Smith's horrific behavior and the lack of action being taken against him.

70.     In February 2017, one Fairview classmate, Student B, created an Instagram account dedicated toward posts portraying Mr. Smith as a rapist.  The Instagram account was made public

and shared throughout Fairview and included many memes explicitly labeling Mr. Smith as a rapist.

71.     Some of the memes also superimposed Ms. Doe's face onto the pictures, identifying her as a victim of Mr. Smith's.

72.     While many at the school found the Instagram account shocking, others found it funny and ridiculed Ms. Doe about the posts, sharing them on social media and forwarding them to Ms. Doe. On multiple occasions, Ms. Doe's classmates would make the posts while sitting in class with her and she was forced to watch them while they laughed and mocked her.

73.     The Instagram account brought Ms. Doe to her breaking point. She largely stopped attending class entirely out of fear and anxiety, could not eat and could not sleep. She dropped out of all school activities and avoided her classmates entirely.  Many of Ms. Doe's teachers witnessed Ms. Doe sobbing in class and she was unable to complete assignments.  But instead of providing her with support and resources, Ms. Doe was sent to detention, threatened with Saturday school, and punished for her failure to participate.

74.     In April 2017, a "safe-2-tell" tip report[2] about the Instagram account was made to Fairview and Fairview Assistant Principal Ross Sutter. Assistant Principal Sutter spoke with Mr. Smith about the account and documented that the account was taken down but did not investigate the multiple reports of rape that were referenced in the account.

75.     On May 11, 2017, Assistant Principal Sutter reported Student B to the police for creating the Instagram account.  He did not report Mr. Smith despite the clear allegations in the

---

[2] Safe2Tell is a platform that allows Colorado students to make anonymous reports about any issues that might threaten them, their friends or their community, including bullying and harassment.  https://safe2tell.org/make-report

Instagram account that Mr. Smith had committed rape. Fairview suspended Student B for creating the Instagram account and made Student B write an apology letter to Mr. Smith.

76.     Mr. Smith continued to attend Fairview without any consequence. Despite knowledge that Mr. Smith had assaulted two female students to date, he remained at Fairview as a member of student council and as a member of the lacrosse team.

77.     Around the same time, Ms. Smalley reached out to Ms. Doe's mother. Ms. Doe and her family were in the process of moving out of Boulder at the time to get Ms. Doe away from Mr. Smith and the harassment at Fairview.

78.     Ms. Smalley explained that the Instagram account targeting Mr. Smith had been reported. She explained that the account was being investigated by police as an incident of cyberbullying, and Fairview wanted Ms. Doe to be aware.

79.     Shortly thereafter, Ms. Doe and her parents were contacted by Fairview administrators to have a meeting. During the meeting, Principal Stensrud explained that Fairview knew about Mr. Smith and knew that he had raped Ms. Doe and others.

80.     At no point during the meeting, or during any previous or subsequent meetings, was Ms. Doe informed about her Title IX rights. Entirely ignoring their Title IX obligations, Fairview asked Ms. Doe if she would file for a restraining order against Mr. Smith, which would allow them to "get rid of" Mr. Smith. Principal Stensrud told Ms. Doe that such action would be extremely brave and disclosed that "this is not my first rodeo, we think there are others – three or four," referencing the school's knowledge of other women who had been assaulted by Mr. Smith.

81.     Principal Stensrud then suggested that Ms. Doe stay home from school for the remainder of the semester and they would freeze her grades. Mr. Smith was allowed to continue to attend school as normal.

82.     Although terrified, Ms. Doe agreed to try to get the restraining order in order to assist the school in removing Mr. Smith.

83.     A day or two later, Officer Nicholas reached out to Student A's mother to talk to her about the details of Mr. Smith's assault of Student A and ask her if she would be willing to bring criminal charges against Mr. Smith. During their meeting, Officer Nicholas disclosed that former Fairview Dean Lefebvre had previously told him that Mr. Smith had also sexually assaulted Student A.

84.     The next day, Ms. Doe and her family began the process of obtaining a temporary restraining order against Mr. Smith.  On May 19, 2017, Ms. Doe was asked to testify before the judge and disclose what had happened with Mr. Smith.

85.     The judge granted Ms. Doe's request and issued an order requiring Mr. Smith to stay 200 yards away from Ms. Doe, but only one yard away from her at school.

86.     When Ms. Doe provided the order to Fairview, they told her there was nothing they could do with it since it still allowed Ms. Doe and Mr. Smith to attend school together.  Instead, they reiterated that she could stay home and have her grades frozen.  While Fairview suggested that Ms. Doe make changes to her schedule to deal with the harassment, they did not ask Mr. Smith to make any such changes.

87.     Ms. Doe did not return to Fairview that spring.

88.     Despite an obvious awareness that Ms. Doe was experiencing a hostile educational environment and a fear and vulnerability toward future harassment so substantial as to force her to leave school, Fairview still refused to open a Title IX investigation into the matter.

89.     Instead, two weeks later, as the temporary restraining order was set to expire, Fairview asked Ms. Doe to return to court to obtain a permanent restraining order.  They told her their hope was it would help them to keep Mr. Smith out of school for the Fall 2018 semester.

90.     Ms. Doe and her family ended up negotiating with Mr. Smith's attorneys to have the existing Temporary Order extended until October 2, 2017.

91.     Throughout the summer of 2017, Fairview refused to tell Ms. Doe if Mr. Smith would be coming back to Fairview in the fall. Ms. Doe contemplated transferring schools entirely or moving to online learning in order to avoid the possibility of encountering Mr. Smith on campus.

92.     When Ms. Doe's parents inquired as to whether Mr. Smith would be allowed to return in light of her report to police and the existing restraining order, Principal Stensrud responded that that was not a call for Fairview to make and would need to be a school district decision but provided no further guidance regarding how the school might proceed.

93.     In light of this ongoing fear and the uncertainty about whether Mr. Smith would be back at Fairview in the fall, Ms. Doe began to regress in her recovery. She was unable to sleep, had frequent nightmares and couldn't eat.  Her parents and therapists were also required to put a safety plan in place because she began having an increasing number of suicidal ideations.

94.     Unexpectedly, Ms. Doe also began to receive texts and phone calls from other young women who had been assaulted by Mr. Smith but were too afraid to come forward or tell their families. At least seven different young women, several of them Fairview students, have reached out to Ms. Doe to disclose that they were also raped by Mr. Smith.

95.     It was only shortly before the beginning of the 2017-2018 school year, on September 5, 2017, that Fairview finally disclosed that they had negotiated with Mr. Smith's

family to allow him to voluntarily leave Fairview without any disciplinary investigation or disciplinary notes in his record and he had transferred to a private boarding school.

96.     When students learned that Mr. Smith would not be returning in the fall they began to circulate SnapChats with the tag "Free [Mr. Smith]," and sent Ms. Doe messages saying "Where's [Mr. Smith], [Ms. Doe]? Why isn't he here?"  Many of these SnapChats made their way to Ms. Doe, giving Ms. Doe even more concern about the backlash she would face upon returning to Fairview in the fall.

97.     Ms. Doe returned to Fairview for the Fall 2017 semester but continued to struggle immensely with school.  Mr. Smith's friends repeatedly harassed her at school for Mr. Smith's departure, asking her why Mr. Smith had been forced to leave and questioning whether Mr. Smith had actually raped her.  Ms. Doe's parents reported this harassment to Fairview on multiple occasions, but nothing was done to stop it.

98.     As a result, Ms. Doe began having difficulty attending classes again. She was often late to her first class of the day because she would have panic attacks upon arriving to school and could not get out of the car.  Fairview officials responded by sending her to detention for her late arrivals.

99.     In January 2018, the situation became so unbearable that Ms. Doe made the decision to leave Fairview and attend a therapeutic wilderness program out of state.  At that program out of state, Ms. Doe met yet another woman who had also been sexually assaulted by Mr. Smith in the summer of 2017.

100.     Ms. Doe completed her senior year as a part-time student, with most of her classes online.

101.     At no point was a Title IX investigation opened, or even mentioned as an option, and no Title IX coordinator was ever involved in the process. In fact, at the time, BVSD had no Title IX coordinator nor Title IX grievance procedures, in violation of federal requirements.

## MR. SMITH RAPES JANE ROE

102.     In May of 2017, several months after Fairview learned of Mr. Smith's sexual assault of Ms. Doe and Student A as well as the Instagram account regarding his rapes, Jane Roe was raped by Mr. Smith on Fairview school grounds.

103.     Ms. Roe and Mr. Smith were participating in a choir performance together the evening the rape occurred. They had been talking casually and agreed to try to meet up during the choir performance to hang out.

104.     After one of the choir concerts completed, they went outside together and walked over to a baseball field dugout.  They began to kiss.  Mr. Smith then asked Ms. Roe to perform oral sex on him.  When she refused to do so, he forced her down onto her knees and pushed her face towards his groin, cutting and bruising her knees.  He then forced Ms. Roe to perform oral sex on him. When Ms. Roe stood up to leave, Mr. Smith grabbed her by the arms, pulled up her dress and raped her.  Although Ms. Roe pleaded with Mr. Smith to stop multiple times, he refused.

105.     Stunned, Ms. Roe climbed the fence to get out of the baseball field and walked back to the front of the school in the pouring rain.  Mr. Smith tried to follow her, but Ms. Roe found her mom and quickly left the building.

106.     That night Ms. Roe told two friends what had happened.  The next day, Fairview Dean Lefebvre came up to one of Ms. Roe's friends at school and asked her if she knew anything about a student who got hurt at the choir concert.  Ms. Roe's friend did not share any information and didn't know how Dean Lefebvre knew to approach her.

107.    For the remainder of the school year, Ms. Roe did her best to avoid Mr. Smith and refused to talk to him.

108.    Over that summer, Mr. Smith came up to her during a local bike ride and asked her if she thought he had raped her. When she said yes, he responded, "you have to admit it was pretty savage," and walked away.

109.    During the 2017-2018 school year, Ms. Roe did not disclose what had happened to her. She did her best to attend school but struggled to process what had happened.  Aware of how others had been treated, she was afraid to tell anyone other than her closest friends about the rape for fear that she would be harassed and ostracized like Ms. Doe had been.

110.    Instead, Ms. Roe attempted to channel her anxiety and pain into her schoolwork but found that maintaining the same quality of work required twice the effort. She struggled to pay attention in class and complete her homework.  And while Ms. Roe tried to continue to attend choir class, she found it triggering and needed frequent breaks from the classroom in order to manage her anxiety.  This led to disagreements and disputes with her choir teachers when she wasn't able to participate and she often found herself in trouble.

111.    Socially, Ms. Roe began to withdraw from friends and her family and had difficulty trusting those around her. Her circle of friends shrank and she avoided family activities that she had previously loved. Many days, Ms. Roe came home from school exhausted, immediately went to her room, and avoided interacting with others.

112.    In the fall of 2019, after struggling with the isolation and pain of dealing with her assault alone for over a year, Ms. Roe made the decision to reach out to Ms. Doe to talk about Mr. Smith.  She was finding it increasingly difficult to manage school and her anxiety had worsened

significantly. Ms. Roe's grades had begun to suffer, she began to leave school due to anxiety attacks, and had to drop out of choir entirely.

113.    Ms. Doe encouraged Ms. Roe to report and said that it would help her to start the healing process.  This convinced Ms. Roe to report her rape to her parents as well as her counselor, who reported the rape to police.

114.    After Ms. Roe reported her rape, her efforts to hold herself together began to unravel. She lost her motivation, was unable to pay attention in class, and couldn't complete her homework. If not for the pandemic allowing her to transition to classes completely online, Ms. Roe would likely have failed her last semester.

115.     Boulder Police Department opened an investigation into Mr. Smith's assault of Ms. Roe.  This investigation ultimately uncovered multiple victims of Mr. Smith's serial predatory behaviors, including Ms. Doe, Student A, and another former BVSD student.

116.    On January 6, 2021, a warrant was issued for Mr. Smith's arrest.  Mr. Smith was charged with eight counts of sexual assault, and two counts of domestic violence.

**FIRST CLAIM FOR RELIEF**
**Violation of Title IX (20 U.S.C. § 1681(a)) (Ms. Doe and Ms. Roe)**
**Official Policy of Indifference (Defendant BVSD)**

117.    Plaintiff realleges each and every allegation set forth in paragraphs in the previous paragraphs as though fully set forth herein.

118.    BVSD officials, specifically Fairview administrators, actively created and maintained an official policy of deliberate indifference to sexual harassment and abuse by Fairview students by refusing to respond to such reports until criminal investigation or court intervention occurred, failing to conduct timely Title IX investigations, failing to adequately train students and staff on sexual abuse and consent, and fostering an environment of fear and gender discrimination at school.

119.    This policy of indifference created a heightened risk of sexual harassment within Fairview, and particularly among student athletes, that was known or obvious to Fairview administrators.

120.    This policy of indifference was a proximate cause of Ms. Doe being subjected to ongoing sexual harassment in the form of (1) a hostile educational environment (2) ongoing harassment perpetrated by Mr. Smith and his classmates; and (3) vulnerability to future harassment by being forced to interact with Mr. Smith and his friends in daily life at Fairview.

121.    The policy was also a proximate cause of Ms. Roe being subjected to rape on Fairview grounds by Mr. Smith.

122.    The sexual harassment and abuse that Ms. Doe and Ms. Roe suffered was so severe, pervasive, and objectively offensive that it effectively barred their access to educational opportunities and benefits.

123.    As a direct and proximate result of the official policy of deliberate indifference, Ms. Doe and Ms. Roe suffered damages and injuries for which the school is liable.

**SECOND CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983 (Ms. Doe and Ms. Roe)**
**Failure to Train in Violation of Plaintiffs' Constitutional and Federal Rights (Defendant BVSD)**

124.    Plaintiffs reallege each and every allegation set forth in paragraphs in the previous paragraphs as though fully set forth herein.

125.    Student-on-student sexual harassment that a school district refuses to remedy is a form of unlawful sex discrimination that violates a student's rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

126.    Plaintiffs also have federal civil rights secured by Title IX of the Education Amendments of 1972, which provides in pertinent part: "[N]o person . . . . shall, on the basis of

sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

127.    At all relevant times, BVSD had unconstitutional customs, policies and/or practices of failing to properly or sufficiently train administrators, teachers, staff and students concerning school policies on sex discrimination and sexual harassment against students, Title IX, and identifying, investigating, reporting, preventing, remedying and stopping student-on-student sexual harassment.

128.    BVSD failed to provide such training to its administrators, teachers, staff and students despite the patently obvious need for training on, among other things, student-on-student sexual harassment and identifying, investigating, reporting, stopping, and remediating the effects of sexual harassment.

129.    Numerous authorities, including the U.S. Supreme Court and U.S. Department of Education made clear and gave notice to BVSD that school employees would confront student-on-student sexual harassment and abuse with regularity, given the high predictability, recurrence, prevalence and injurious nature of such harassment and abuse in schools. Thus, it was obvious and foreseeable that BVSD's administrators and employees would encounter recurrent situations involving sexual harassment that implicated students' Constitutional and federal rights, and they did, in fact, encounter those recurring situations.

130.    BVSD failed to adequately train its administrators, teachers, staff and students, and thereby failed to prohibit or discourage foreseeable sexual harassment and assault, despite the clearly established and well-known dangers of sexual abuse, harassment, and assault faced by students in U.S. public schools.

131.    BVSD's failure to train its administrators, teachers, staff and students caused Ms. Doe to suffer ongoing sexual assault, sexual harassment and a hostile educational environment in violation of her Constitutional and federal rights.

132.    BVSD's failure to train its administrators, teachers, staff and students caused Ms. Roe to suffer sexual assault in violation of her Constitutional and federal rights.

133.    BVSD's failure to train administrators, staff, and students was deliberate, reckless, and in callous indifference to Ms. Doe and Ms. Roe's Constitutional and federal rights.

134.    Ms. Doe and Ms. Roe have suffered these and other damages as set forth above.

**THIRD CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983 (Ms. Doe and Ms. Roe)**
**Equal Protection (Defendant BVSD)**

135.    Plaintiff realleges each and every allegation set forth in the previous paragraphs as though fully set forth herein.

136.    The discriminatory conduct directed toward Plaintiffs was representative of an official policy or custom of BVSD and/or was undertaken by an official or officials with final policymaking authority.

137.    Upon information and belief, Principal Stensrud had final policymaking authority with respect to Fairview High School.

138.    Defendant Stensrud's indifference toward female students and administrators reporting sexual assault and  repeated determination that Fairview would not open a Title IX investigation or take action to address sexual misconduct unless a victim pursued charges with police or sought a restraining order therefore constituted an official policy of BVSD.

139.    As a result of BVSD's indifference and its violations of 42 U.S.C. § 1983, Plaintiffs were subjected to severe discrimination and suffered significant damages as set forth above.

## FOURTH CLAIM FOR RELIEF
### Violation of Title IX (20 U.S.C. § 1681(a)) (Ms. Doe)
### Deliberate Indifference to Ms. Doe's Report of Sexual Assault (Defendant BVSD)

140.     Plaintiff realleges each and every allegation set forth in paragraphs in the previous paragraphs as though fully set forth herein.

141.     Beginning in late 2016 and by no later than March 2017, BVSD had acknowledge knowledge that Ms. Doe was a victim of rape by Mr. Smith, and that she was experiencing an ongoing hostile educational environment due to Mr. Smith's ongoing presence at Fairview, verbal and cyber harassment from Mr. Smith and his friends, and retaliation by other students for reporting her rape to the school.  BVSD was also on notice of the significant impact that this hostile educational environment was having on her education at Fairview given Ms. Doe's ongoing reports to school administrators and eventual withdrawal.

142.     BVSD acted with deliberate indifference to this notice when it failed to conduct a Title IX investigation into the hostile educational environment or Ms. Doe's vulnerability to further harassment or take remedial measures to address the hostile educational environment and prevent further harassment. BVSD's failure to take any action was clearly unreasonable in light of known circumstances.

143.     The hostile environment and harassment Ms. Doe experienced were so severe, pervasive and objectively offensive that they deprived Ms. Doe of access to educational benefits or opportunities and ultimately led her to leave Fairview early in the spring of 2017 and withdraw entirely in January 2018.

144.     In addition, Ms. Doe has suffered and continues to suffer from anxiety, panic attacks, suicidal ideations, self-harm, and emotional distress as a result of this hostile educational environment and the institutional betrayal she experienced from Fairview.

145.     Ms. Doe has suffered these and other damages as a result of BVSD's violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as set forth above.

## FIFTH CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983 (Ms. Doe)
### Equal Protection (Defendant Donald Stensrud)

146.    Plaintiff realleges each and every allegation set forth in the previous paragraphs as though fully set forth herein.

147.    Based upon information he received, Defendant Principal Stensrud had actual knowledge of Mr. Smith's multiple sexual assaults of female students at Fairview and the ongoing hostile educational environment that Ms. Doe was experiencing as a result of her assault.

148.    Nonetheless, Defendant Principal Stensrud acquiesced in and was deliberately indifferent to Mr. Smith's sexual misconduct and the ongoing hostile educational environment Ms. Doe experienced by refusing to respond reasonably to it, failing to investigate and redress whether Ms. Doe was experiencing a hostile educational environment or whether she was vulnerable to further harassment, failing to investigate and redress additional harassment that Ms. Doe was experiencing, and failure to investigate whether Mr. Smith posed a substantial risk of harm to other female students.

149.    The law was clearly established at the time of Defendant Principal Stensrud's actions and failures to act such that a reasonable official in his position would have understood that his or her conduct implicated Plaintiff's constitutional rights. *Murrell v. Sch. Dist. No. 1, Denver, Colo.,* 186 F.3d 1238, 1251 (10th Cir. 1999); *Doe v. Roaring Fork Sch. Dist.,* 2020 WL 7711322 at *4-6 (D. Colo. Dec. 29, 2020).

150.    Plaintiff has suffered significant damages as a result of these violations of 42 U.S.C. § 1983, as set forth above.

## SIXTH CLAIM FOR RELIEF
### Violation of Title IX (20 U.S.C. § 1681(a)) (Ms. Roe)
### Substantial Risk of Harm to Ms. Roe (Defendant BVSD)

151.    Plaintiff realleges each and every allegation set forth in paragraphs in the previous paragraphs as though fully set forth herein.

152.    Beginning in late 2016 or by no later than spring 2017, BVSD officials, including Principal Stensrud, Assistant Principal Sutter and Dean Lefebvre, had actual knowledge of a substantial risk of harm to female students based on the fact that Mr. Smith had raped at least fellow students, Student A and Ms. Doe if not more.

153.    BVSD acted with deliberate indifference to these reports when it failed to conduct any Title IX investigation into the substantial risk that Mr. Smith posed, take remedial measures to prevent further sexual violence, or otherwise act to protect other students, like Ms. Roe, from the possibility of harm. This failure to take any action, despite BVSD's authority to do so, was clearly unreasonable in light of the known circumstances.

154.    As a direct and proximate result of BVSD's failure to respond to knowledge of the substantial risk posed by Mr. Smith, Ms. Roe was raped by Mr. Smith on Fairview's campus.

155.    Ms. Roe's rape was so severe, pervasive, and objectively offensive that she was denied access to educational opportunities and benefits, including having difficulty participating in and having to miss classes and choir events, struggling to complete schoolwork, experiencing panic attacks at school, and difficulty paying attention in class.

156.    In addition, Ms. Roe has suffered and continues to suffer from anxiety, panic attacks, and emotional distress as a result of her rape.

157.    Ms. Roe has suffered these and other damages as a result of BVSD's violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as set forth above.

## PRAYER FOR RELIEF

On their claim for relief, Plaintiffs seek the following:

A.    An award of damages to be determined at trial, including, without limitation, reimbursement and prepayment for all of Plaintiffs' expenses incurred; damages for deprivation

of equal access to the educational benefits and opportunities provided by Fairview, damages for past, present and future emotional pain and suffering, ongoing and severe mental anguish, and loss of past, present and future enjoyment of life in an amount to be determined by the jury;

      B.      An award of punitive damages under 42 U.S.C. § 1983 with respect to Defendant Principal Stensrud;

      C.      Statutory and mandatory interest on all sums awarded;

      D.      An award of costs and attorney fees (pursuant to 42 U.S.C. § 1988(b)); and

      E.      Any other relief as is proper.

**PLAINTIFFS DEMAND A JURY TRIAL OF ALL ISSUES SO TRIABLE**

Dated:  August 6, 2021

Respectfully submitted,

HUTCHINSON BLACK AND COOK, LLC

By: ___*/s/ Lauren Groth*_____
      John Clune, No. 27684
      Lauren Groth, No. 47413
      921 Walnut Street, Suite 200
      Boulder, CO  80302
      (303) 442-6514
      clune@hbcboulder.com
      groth@hbcboulder.com